**Susan R. BUSSELL, Plaintiff,**

v.

**Wilkus MINIX and the Board of Commissioners of Starke County, Indiana, Defendants.**

**No. 3:95–CV–459RM.**

United States District Court, N.D. Indiana, South Bend Division.

May 1, 1996.

Joseph V. Simeri, Butler and Simeri PC, South Bend, IN, for plaintiff.

Robert T. Keen, Jr., Miller Carson Boxberger and Murphy, Fort Wayne, IN, for defendants.

*MEMORANDUM AND ORDER*

MILLER, District Judge.

The plaintiff seeks to communicate with three County employees before their depositions, and filed a motion requesting the court issue an order permitting her counsel to interview the employees *ex parte*. For the reasons that follow, the court grants the plaintiff's motion.

*I. BACKGROUND*

On January 6, 1995, five days after Starke County Sheriff Wilkus Minix began his term, he terminated plaintiff Susan Bussell from

her position as a dispatcher. Ms. Bussell alleges that she was fired because of her political support for Bob Sims, Sheriff Minix's opponent. The depositions of Bob Sims and two Starke County dispatchers, Sharon Lemke and Jana Coldiron, are scheduled for May 6, and Ms. Bussell's attorney wants to meet with them before their depositions. Ms. Bussell argues that her counsel is entitled to meet with the three employees under Rule 4.2 of the Indiana Rules of Professional Conduct because the employees are not represented by an attorney and have no managerial responsibility.

In their response, the defendants agree that *ex parte* interviews with Ms. Lemke and Ms. Coldiron "are arguably permissible because both of these witnesses are dispatchers whose statements cannot bind the Sheriff." The defendants urge the court to require plaintiff's counsel to disclose to Ms. Lemke and Ms. Coldiron before any interview that they have the right to refuse to be interviewed or to have their personal counsel present. The court agrees that, under Rule 4.2, plaintiff's counsel may interview Ms. Lemke and Ms. Coldiron, and directs Ms. Bussell's attorney's attention to the requirements of Rule 4.3 of the Indiana Rules of Professional Conduct.

With respect to Mr. Sims, the defendants contend that the plaintiff cannot conduct an *ex parte* interview because, as Chief of Detectives, "he exercises managerial responsibility in that position", and his statements may be imputed to the Sheriff. In her reply, Ms. Bussell argues that Rule 4.2 applies to *ex parte* communications with employees having managerial responsibility relating to the matter in question, and that Mr. Sims has no significant managerial responsibility, and no managerial responsibility with respect to her termination. In support, Ms. Bussell cites portions of Sheriff Minix's deposition in which the Sheriff stated that he promoted Mr. Sims to Chief Detective (of the three Starke County detectives, though one was assigned as a drug officer), which increased his responsibility though did not increase his pay. Minix Dep. at 62. Sheriff Minix stated in his deposition that he told Ms. Bussell on January 6, 1995 that he was going to replace her, though she could work until she found another job. *Id.* at 10. Sheriff Minix also described his department organizational chart, explaining that below him is the Chief Deputy, then the Captain (though the slot was open at the time of his deposition), then the detectives, "[a]nd the rest of them are patrolmen", making a total of eleven officers. *Id.* at 18–19. Ms. Bussell also presents portions of the Starke County Sheriff's Department Policy and Procedure Manual, which show an organizational chart listing the Sheriff as head of the Department, the Chief Deputy as second-in-command, and the Jail and Enforcement Divisions at an equal level under the Chief Deputy. Nowhere in the Manual, Ms. Bussell claims, are any detectives listed as having any managerial responsibility.

## II. ANALYSIS

Rule 4.2 provides, "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." The Comment to Rule 4.2 states, in relevant part:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

The Comment to Rule 4.2 makes clear that relevant inquiries in deciding whether an opposing attorney may communicate with an employee of an organization are whether the employee has managerial responsibility on behalf of the organization, whether the employee's acts or omissions relating to the issue in litigation may be imputed to the organization, and whether the employee's statements may constitute an admission by the organization.

The defendants state that Mr. Sims has managerial responsibility, but offer no explanation of the scope or nature of his duties. Ms. Bussell attempts to prove a negative; in response to the defendants' statement that Mr. Sims has managerial responsibility, she offers Sheriff Minix's deposition testimony and the department organizational chart to show that he does not. Other than the fact that Mr. Sims is Chief Detective (and presumably has managerial responsibility over the other detective), the court finds no support for the defendants' assertion that Mr. Sims has managerial responsibility on behalf of the Sheriff's Department.

With respect to the second inquiry, there is no evidence that Mr. Sims's actions are at issue in this litigation, and that there is no issue regarding whether any actions could be imputed to the organization. Ms. Bussell presents Sheriff Minix's deposition testimony that he terminated her, and the defendants do not claim that Mr. Sims had anything to do with her termination. There is no evidence that the plaintiff's attorney seeks to interview Mr. Sims regarding his involvement in the actions leading to the present litigation. *Cf. Butta–Brinkman v. Financial Collection Agencies (1990), Inc.*, No. 95–C–3632, 1996 WL 5194, at \*2 (N.D.Ill. Jan. 3, 1996) (under identically worded rule and comment; court found witness fell "squarely within the parameters of those persons with whom ex parte communications are forbidden by Rule 4.2" where he "was not a mere witness to the events alleged in the Complaint, but a person who had managerial responsibility in the defendant corporation and whose conduct with respect to matters of discrimination ... may very well be imputed to the organization for purposes of civil or criminal liability, or a person whose statement may constitute an admission on the part of the organization with respect to such.").

Whether Mr. Sims's statements could constitute admissions by Starke County depends on Federal Rule of Evidence 801(d)(2)(D), which defines statements "by a party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" as non-hearsay. *Butta–Brinkman*, 1996 WL 5194, at \*3. The defendants state that Mr. Sims's statements could bind the Sheriff, but offer no explanation as to how or why. The record contains no evidence suggesting that any matter at issue in this case falls within the scope of Mr. Sims's employment, or that he could hurt or bind the County or Sheriff with respect to the issues of this litigation.

### III. CONCLUSION

For the foregoing reasons, the court GRANTS the plaintiff's motion for an order permitting *ex parte* interviews of certain witnesses (filed Apr. 11, 1996 (# 15)), and hereby ORDERS that plaintiff's counsel is permitted to conduct *ex parte* interviews with Sharon Lemke, Jana Coldiron, and Bob Sims.

SO ORDERED.